**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No.:** |
| | § | |
| **GUARDIAN OIL & GAS, INC.** | § | |
| **GUARDIAN OIL & NATURAL GAS, INC.,** | § | |
| **and RICK D. MULLINS,** | § | |
| | § | |
| **Defendants** | § | |
| _____ | § | |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY

1.      From August 2010 through May 2013, Rick D. Mullins, through the companies he controlled, Guardian Oil and Gas, Inc. ("Guardian") and Guardian Oil and Natural Gas, Inc. ("GONG"), raised approximately $6.5 million through the fraudulent offer and sale of securities to investors in the form of partnership interests in oil and gas programs that were to be operated in Texas and Louisiana.  Guardian and GONG, both controlled by Mullins, served as managing general partners in the respective drilling programs.

2.      Throughout these offerings, Defendants made a variety of material false representations and omissions to investors.  For example, they falsely represented to investors that their contributions would be used solely in connection with the specific drilling project in which they had invested.  Defendants also did not disclose growing cash-flow problems and deteriorating financial condition to investors, nor did they disclose the fact that Defendants intermingled investor funds and used those funds to pay unrelated expenses.  Defendant Mullins

also made direct misrepresentations to investors.  For example, in 2012 and 2013, after collecting money from investors for one project and spending that money on unrelated expenses, Guardian was unable to retain an interest in the oil and gas drilling project that it had purported to sell to investors.  Mullins then personally lied to investors, telling them, among other things, that the well was unproductive and that Defendants had been approached by a possible purchaser of the partnership's interest.  Defendants never disclosed that the investors' funds had been spent elsewhere and that Defendants did not actually possess an interest in the drilling project they sold.

3.      By reason of the foregoing: Defendants Guardian, GONG, and Mullins violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. In the interest of protecting the public from any further violations of the federal securities laws, the Commission brings this action against the Defendants, seeking permanent injunctive relief and disgorgement plus prejudgment interest from all Defendants, civil money penalties from Defendant Mullins, and all other equitable and ancillary relief deemed necessary by the Court.

## JURISDICTION AND VENUE

4.      The Commission brings this action under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices, and courses of business alleged herein.

5.      This Court has jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e)

and 78aa].  The limited partnership interests offered and sold in this matter are securities as that

term is defined under the federal securities laws.

6.      The Defendants, directly and indirectly, made use of the mails and of the means

and instrumentalities of interstate commerce in connection with the transactions, acts, practices,

and courses of business described in this Complaint.

7.      Venue is proper because transactions, acts, practices, and courses of business

described below occurred within the jurisdiction of the Northern District of Texas.

## PARTIES

8.      Plaintiff Commission is an agency of the United States of America charged with

enforcing the federal securities laws.

9.      Defendant Guardian is a privately held non-operating oil and gas exploration and

development company incorporated in Delaware and headquartered in Southlake, Texas.

Guardian is managing partner of limited partnerships formed to raise money from the sale of

securities in the form of partnership interests to acquire working interests and net revenue

interests in oil and gas exploration projects.

10.     At all times relevant to the Complaint, Defendant GONG was a Texas

corporation.  Established in 2010, GONG was managing partner of limited partnerships formed

to raise money from the sale of securities in the form of partnership interests to acquire interests

in oil and gas exploration projects.

11.     Defendant Mullins, age 50, of Southlake, Texas, is the president, chairman, and

co-founder of Guardian, and served as director and president of GONG in 2013.  He also co-

founded Mullins & White Energy, Inc., which merged into Mullins & White Exploration, Inc.,

the predecessor to Guardian.  Mullins also serves as president of Guardian Ventures, Inc., the

parent company of a group of companies including Guardian Oil & Gas, Inc.  Mullins is a

licensed attorney in the state of Texas and is a licensed CPA in the state of Texas.

## STATEMENT OF FACTS

### A.     *Limited Partnership Offerings*

12.     Defendant Mullins has been involved in the oil and gas industry since at least

1996.  In 2006, he formed Guardian, which raised money for oil and gas exploration through the

sale of interests in limited partnerships to investors.  Defendants have formed and sold interests

in approximately 50 limited partnerships.

13.     In 2010, Mullins formed GONG, which also raised money for oil and gas

exploration through the sale of limited partnership interests.  Both Guardian and GONG served

as managing partner in the limited partnerships that Defendants formed and marketed.

14.     Between August 2010 and June 2012, Guardian and GONG established a separate

limited partnership for each of their respective oil and gas prospects.  Defendants told investors

that these partnerships were formed to acquire a portion of the working and net revenue interests

in specific wells.

15.     As managing partner, Guardian and GONG held broad powers over each

partnership's management and business operations.  Accordingly, Guardian and GONG

represented that they were accountable to the partnerships as fiduciaries and were required to

exercise the utmost good faith and integrity in the handling of partnership affairs.  As managing

partners, Guardian and GONG negotiated and entered into agreements with "operators," who

performed or caused to be performed all services in connection with the supervision and

management of the well.

16.     For each limited partnership, Mullins created a private placement memorandum ("PPM") in which he described the details of that partnership's oil and gas project, including the potential benefits and risks related to that project.

**B.     Defendants' Financial Difficulties**

17.     On March 2, 2009, Guardian entered into a credit agreement with Western National Bank ("WNB"), guaranteed by Guardian Ventures, Inc., Rick Mullins, and his wife, Theresa Mullins.  As part of this agreement, WNB extended to Guardian a revolving line of credit in the amount of approximately $30 million and a term loan of about $6 million.  Guardian pledged various oil and gas leases, properties, contracts, pooled interests, and real estate as collateral under this credit agreement.

18.     Almost immediately, Guardian encountered difficulty in making payments on its debt to WNB.  For example, Guardian's May 2009 payment went past-due in part because Operators on Guardian's drilling projects were netting Guardian's outstanding drilling debts to the Operators against any project revenues.  This process, known as "net checking," often resulted in Operators subtracting expenses for various unrelated drilling projects from the revenue checks sent to Guardian for a particular well.  The net-checking of partnership proceeds continued into 2012.  In June 2012, GONG proposed to a primary operator that Guardian would waive production revenue from one project in order to satisfy delinquent expense payments on several unrelated Guardian partnership projects.

19.     In August 2010, Guardian sold assets worth approximately $10.5 million to pay part of the outstanding principal due under the WNB loans.

20.     Guardian's financial difficulties continued to worsen, and in late 2011, the firm laid off most of its workforce and significantly limited its operations.  Despite these efforts,

Guardian's financial problems continued well into 2012, prompting Guardian to repeatedly seek

loan modifications from WNB.  WNB generally agreed to these modifications, but required

Guardian to pledge additional collateral, including additional proceeds from oil and gas

production.

21.     In May 2012, Guardian owed more than $6 million on the WNB loan.

Recognizing that Guardian's financial condition was strained, WNB wrote off nearly $3 million

of Guardian's loan balance in May 2012.

**C.     *Defendants' False Statements and Omissions***

22.     Although they continued to offer securities to Investors from 2009 to 2012,

Defendants never told investors about their repeated attempts to modify the terms of their loan

with WNB or the eventual write-off of a significant portion of Guardian's loan balance with

WNB.

23.     In fact, between August 2010 and June 2012, Defendants failed to disclose any of

Guardian's financial difficulties.  Rather, Guardian's and GONG's PPMs – drafted by Mullins –

stated  that "it is possible" that a "significant financial reversal" for the managing partner could

impair its ability to meet its obligations to the partnership and adversely affect the value of the

Investors' interests.  At the times the Defendants made these statements, they were aware that

Guardian and GONG were experiencing significant cash flow issues and that the negative impact

on investors' interests was no mere possibility, but rather a known and occurring fact.

24.     Similarly, Defendants never informed investors that they were not timely

receiving production revenue payments from wells in which they were invested because of the

continued practice of net checking – the process by which production revenue from one

Guardian investor project was offset against expenses due on another, unrelated Guardian

investor project with the same operator.  Defendants never informed investors of GONG's June 2012 proposal which would divert investor proceeds to cover expenses from other unrelated investor projects.  Rather, Guardian's and GONG's PPMs represented to investors that "[w]ithin the Partnership, the Investor Partners shall be allocated 100% of all revenue, expense, gain, and losses," and that the partnership "[would] collect its share of all revenues from the sale of any gas production and pay them directly, less Lease Operating Costs, to the Partners."

25.     Defendants also misrepresented to Investors how their invested funds would be used.  Between August 2010 and May 2013, Defendants collected money from investors, representing that their invested funds would be used to cover six enumerated expenses: (1) organization and offering expenses; (2) initial services fee; (3) geological and geophysical expenses; (4) leasehold acquisition costs; (5) payments under a turnkey contract with the operators of the well; (6) sales commission and other fees.  In fact, Defendants used Investor funds from one partnership to cover expenses unrelated to the Investors' partnerships.

26.     Mullins committed such acts in multiple offerings.  For example, in the case of a December 6, 2011 offering, the "Bull Moose Prospect," Guardian and Mullins failed to use the funds provided by investors in connection with the actual Bull Moose Prospect, spending investors' cash on unrelated expenses instead.  When drilling began on that project, Guardian did not have the funds needed to complete the purchase of the working interest in the project.  Having already spent the Investors' cash, and having insufficient funds of its own, Guardian could not make payments required by the operators, and began trying to sell real estate through an affiliate to raise the required substitute funds.  Defendants did not tell investors that their purported interest in the Bull Moose Prospect now relied on the success of an undisclosed real estate transaction.

27.     Subsequently, the operators of the Bull Moose Prospect proposed drilling the well deeper, and called for more funds from their partners.  After failing to satisfy the operators' earlier funds request, Guardian collected approximately $75,000 in additional funds from its partnership investors in the Bull Moose Prospect in connection with the cash call for deepening the well.  When collecting these additional funds, Guardian and Mullins did not disclose to investors that (1) they had misspent the investors' initial investment on expenses unrelated to the Bull Moose Prospect, and (2) they were trying to salvage investors' interest in the Prospect through a real estate deal that had not closed.

28.     On November 9, 2012, the operators rejected the funds sent by Guardian, stating that they had "no records of any business relationship with Bull Moose Prospect, LP" and otherwise rejecting Guardian's payment as partial and unacceptable under the joint operating agreement.  Again, Defendants did not tell their investors that their funds had been rejected, leaving them to believe that their additional investments had been used to deepen the Bull Moose well.  On the contrary, Mullins personally lied to an investor in a December 19, 2012 email, saying that the Bull Moose well was not producing as well as he had hoped, that because of the lackluster production, "the likelihood of a payout seems very, very, slim," and that Guardian had been approached by another company with an interest in purchasing the partnership's interest in the well.  As Mullins knew at the time, or was at least severely reckless in not knowing, all of these statements were false and misleading.

29.     On January 31, 2013, when asked for the latest news on the Bull Moose well, Mullins told the same Investor that because of "some ongoing contract issues," Guardian would likely be refunding Investors' money or offering Bull Moose Prospect Investors a "position in another well."  Again, Guardian and Mullins did not disclose to the Investor that the "ongoing

contract issue" was that Guardian had spent Investors' cash elsewhere and was unable to pay the operators.

30.     In early 2013, Mullins and Guardian sent a memorandum to Bull Moose Prospect Investors stating that "for various reasons, Guardian Oil & Gas, Inc. had ongoing contract issues with the operators" and offering one of two options: (1) a refund of the amount contributed, subject to a scheduled payout and expressly not secured by any assets held by Guardian; or (2) a transfer of Investors' capital contribution from the Bull Moose partnership to a different well. Again, Guardian and Mullins did not disclose to Investors that the "ongoing contract issue" was that Guardian had spent Investors' cash elsewhere and was unable to pay the operators.  The vast majority of Bull Moose Investors chose the second option, reinvesting with Guardian and Mullins, and transferring their interests into another well through Guardian.

## FIRST CLAIM

### Violations of Section 17(a) of the Securities Act

31.     Plaintiff Commission re-alleges and incorporates paragraphs 1 through 30 of this Complaint by reference as if set forth in this Claim.

32.     Defendants Guardian, GONG, and Mullins directly or indirectly, singly or in concert with others, in the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes, and artifices to defraud;  (b) obtained money or property by means of untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in transactions, practices, and courses of business which operate or would operate as a fraud and deceit upon the purchasers.

33.     With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, Defendants Guardian, GONG, and Mullins were negligent in their actions regarding the representations and omissions alleged herein.  With respect to violations of Section 17(a)(1) of the Securities Act, Defendants Guardian, GONG, and Mullins made the referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

34.     For these reasons, Defendants Guardian, GONG, and Mullins have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

35.     Plaintiff Commission re-alleges and incorporates paragraphs 1 through 30 of this Complaint by reference as if set forth in this Claim.

36.     Defendants Guardian, GONG, and Mullins, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have: (a) employed devices, schemes, and artifices to defraud;  (b) made untrue statements of a material fact and omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c)  engaged in acts, practices, and courses of business which operate or would operate as a fraud and deceit upon purchasers, prospective purchasers, and any other persons.

37.     Defendants Guardian, GONG, and Mullins made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

38.     For these reasons, Defendants Guardian, GONG, and Mullins violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

Plaintiff Commission respectfully requests that this Court:

(1)     Permanently enjoin all Defendants from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

(2)     Permanently enjoin Defendant Mullins from, (a) directly or indirectly, soliciting investors existing or potential investors to purchase or sell securities, provided however, that such injunction shall not prevent Mullins from purchasing or selling securities for his own account, and (b) from participating, directly or indirectly, in any oil and gas related securities offering, including: acting as a manager, administrator, promoter, finder, consultant, agent, or other person who engages in activities with a broker, dealer, or issuer for purposes of the issuance of interests in oil and gas investments.

(3)     Order all Defendants to disgorge an amount equal to the funds and benefits obtained illegally, or to which he is otherwise not entitled, as a result of the violations alleged, plus prejudgment interest on that amount;

(4)     Order Defendant Mullins to pay civil monetary penalties in an amount determined appropriate by the Court pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] for the violations alleged herein;

(5)     Order such other relief as this Court may deem just and proper.


DATED:  April 25, 2010                    Respectfully submitted,



                                          _s/Matthew J. Gulde_____
                                          MATTHEW J. GULDE
                                          Illinois Bar No. 6272325
                                          United States Securities and Exchange Commission
                                          Fort Worth Regional Office
                                          Burnett Plaza, Suite 1900
                                          801 Cherry Street, Unit #18
                                          Fort Worth, TX 76102-6882
                                          Ph: 817-978-1410
                                          Fax: 917-978-4927
                                          _guldem@sec.gov_

                                          ATTORNEY FOR PLAINTFF